**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| _____ | : | Civil Action No.:16-8792(FLW) |
| JOHN BRANDT, | : | **OPINION** |
| Plaintiff, | : | |
| vs. | : | |
| ROBERT THURING, *et al.*, | : | |
| Defendants. | : | |
| _____ | : | |

**WOLFSON, United States District Judge:**

Presently before the Court are two separate unopposed[1] motions to dismiss *pro se* Plaintiff's claims by defendants: 1) Wal-Mart Stores East, LP ("Walmart");[2] and 2) Officers Robert Thuring and Chris Williams, the East Brunswick Police Department, the Township of East Brunswick (the "Township"),[3] Chief of Police James Conroy, and Internal Affairs investigator Sean Goggins (the "Municipal Defendants")(together with Walmart, "Defendants"). Plaintiff's

---

[1] The Court sent a Letter, dated January 7, 2019, to *pro se* plaintiff John Brandt ("Plaintiff") notifying Plaintiff that two motions to dismiss were pending and that no opposition papers had been received. Plaintiff never responded to the Court's correspondence, or otherwise submitted any opposition to the motions. Therefore, as the Court indicated in the Letter, these motions will be considered unopposed.

[2] Improperly pled as Wal-Mart Stores, Inc. Plaintiff also names as a defendant Cristian Zeas, who was a former Walmart loss prevention employee. However, it does not appear that Zeas has been served with process or otherwise appeared in this action.

[3] Improperly pled as Municipality of East Brunswick.

claims arise out of an alleged shoplifting incident at a Walmart store. In his Complaint, Plaintiff avers that Defendants' joint and concerted conduct violated his First, Fourth and Fourteenth Amendment rights by falsely detaining him. Plaintiff also alleges that Officers Williams committed assault during Plaintiff's detention, and that the Officers retaliated against him as a result of the shoplifting incident.

For the reasons that follow, the Court **GRANTS** Walmart's motion to dismiss; and the Municipal Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part. All claims are dismissed, with the exception of Count III for retaliation against Officers Williams and Thuring. That claim may proceed. However, Plaintiff must respond, in writing, within 15 days from the date of the Order accompanying this Opinion why the surviving claim should not be dismissed for failure to prosecute.

### BACKGROUND AND PROCEDURAL HISTORY

For the purposes of these motions, the following version of events assumes Plaintiff's factual allegations as true. Plaintiff alleges that on December 8, 2015, at 2:00 am, Zeas, a Loss Prevention Officer ("LPO") at the East Brunswick Walmart, apprehended and detained Plaintiff without reasonable grounds for doing so. (Compl., ¶¶ 13 – 14.) Plaintiff states that when he was approached by Zeas, he and his female companion were paying for an item at the cash register. (*Id.* at ¶ 13.) Plaintiff avers that he

and his companion were confined in Walmart's "holding pen," accused of shoplifting and were not permitted to leave. *Id.* When Plaintiff denied involvement in shoplifting, Plaintiff was allegedly told by the LPO that charges would be brought if he did not cooperate. (*Id.* at ¶ 15.) After refusing to cooperate, Zeas called the East Brunswick Police Department, and thereafter, Officers Thuring and Williams arrived at the store.

Plaintiff alleges that the Officers did not perform an independent investigation regarding the shoplifting accusations, but rather, relied on the false information given by the LPO. (*Id.* at ¶¶ 15-16.) Plaintiff claims that the Officers did not review any video footage, and attempted to coerce Plaintiff to confess. (*Id.* at ¶ 17.) Plaintiff further claims that the Officers and Walmart had a "prearranged plan" to use coercive interrogating tactics, such as fear and intimidation, to obtain incriminating evidence against Plaintiff. (*Id.* at ¶ 18.) In that connection, Plaintiff avers that, in an effort to intimidate, Officer Williams "balled his fist up as if he was about to punch [P]laintiff," in order to force a confession. (*Id.* at ¶¶ 20-21.) Plaintiff alleges that he was detained by Defendants for a significant period of time, albeit Plaintiff never set forth how long he was in the "holding pen." (*Id.* at ¶ 23.) Plaintiff avers that he was

ultimately "coerced" to sign a document agreeing never to return to the Walmart store in East Brunswick.[4] (*Id.*)

According to Plaintiff, the harassment by East Brunswick police continued after the alleged shoplifting incident. A few weeks later, Plaintiff received two traffic summonses in the mail charged by Officer Thuring with having tinted windows in violation of N.J.S.A. 39:3-75, and improper use of horn in violation of N.J.S.A. 3:3-69. (*Id.* at ¶ 25.) However, Plaintiff does not elaborate on how these tickets came about. Rather, Plaintiff alleges that the Officers[5] never inquired whether he was permitted to have tinted windows before issuing the tickets. (*Id.*) Indeed, Plaintiff maintains that he was permitted to drive with window tints by the N.J. Motor Vehicle Commission on account of a medical condition of photosensitivity to light as a result of hyper-thyroidism. (*Id.*). Furthermore, Plaintiff alleges that the

---

[4]    According to Plaintiff, Officer Thuring wrote a report of the Walmart incident, explaining that a surveillance video showed that Plaintiff's female companion removed a cell phone case from its packaging, and she could be seen giving the cell phone case to Plaintiff. (Compl., ¶ 28.) Plaintiff denies this summary of the video surveillance, and claims that both Officers falsely reported the incident in the police report. (*Id.* at ¶ 29.)

[5]    While Plaintiff alleges that the tickets were signed by Officer Thuring, throughout the Complaint, he alleges that both Officers were involved in the issuance of the tickets. Plaintiff does not attach a copy of the summonses to the Complaint. Without them, the Court cannot discern which officer was personally involved, or both. As such, at this stage, I will refer to both Officers when discussing Plaintiff's retaliation claim.

Officers fabricated a story that Plaintiff drove his vehicle up Route 18 and blew his horn multiple times for no reason. (*Id.* at ¶ 26.) These tickets, Plaintiff submits, were issued to retaliate against him for the incident that occurred at Walmart.[6] (*Id.*)

According to Plaintiff, an internal investigation of the alleged false police report was conducted by Lieutenant Goggins, who was an internal affairs officer of the East Brunswick Police Department. (*Id.* at ¶ 30.) Plaintiff claims that despite such an investigation, no discipline was ever brought against Officer Thuring or Williams. Plaintiff also claims that Chief Conroy did not properly train the Officers on "not to substitute their own judgment of probable cause or if they have reasonable grounds to detain a shoplifter with that of a merchant . . . ." (*Id.* at ¶ 32.)

Plaintiff filed the instant Complaint asserting the following Counts:

---

[6] Apparently, both charges were tried in Municipal Court in Metuchen, New Jersey, before a Municipal Court Judge, because of conflict issues arising out of this case. Plaintiff was found guilty on all counts. While Plaintiff did not include this fact in his Complaint, the Municipal Defendants, along with their moving brief, submitted a transcript of the trial. Indeed, this case was administratively terminated pending that municipal court proceeding. Now that it has concluded, I can consider the trial transcript because it is undisputedly a public document. *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426 n.7 (3d Cir. 1999). To be sure, however, for the purposes of this Opinion, I am not relying on the truth of the facts contained in the transcript. *Id.*

- Count I asserts a claim for "wrongful detention and imprisonment" under § 1983 against all defendants. In that regard, Plaintiff alleges that Walmart and the East Brunswick Police Department operated "a joint venture," the purpose of which is to illegally detain and imprison Plaintiff "without any probable cause or reasonable grounds." (Comp.,¶ 42.)

- Count II is entitled "Civil Assault by Officer Chris Williams." Plaintiff alleges that Chris Williams committed civil assault by "balling his fist up during the interrogation and placing Plaintiff in fear of bodily harm." (*Id.* at ¶ 44.) Plaintiff goes on to allege that "[a]ll defendants participated by their support and physical presence in the civil assault . . . in violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution." (*Id.*)

- Count III involves Plaintiff's accusation of retaliation by Officers Thuring and Williams. In that regard, Plaintiff alleges that the Officers falsely issued two traffic tickets without probable cause in retaliation for Plaintiff's conduct during the alleged shoplifting incident; this type of retaliation, says Plaintiff, violated his First Amendment rights. (*Id.* at ¶ 45.)

- Count IV is asserted against the East Brunswick Police Department. It appears Plaintiff seeks to bring a *Monell*[7] claim against the Department for failure to train and supervise, and failing "to discourage further constitutional violations of the officers . . . ." (*Id.* at ¶ 46.)

In the instant matters, Walmart and the Municipal Defendants move separately to dismiss Plaintiff's Complaint. As I have noted earlier in this Opinion, Plaintiff has failed to oppose these motions, even after this Court sent a Notice informing Plaintiff that these motions have been pending. Indeed, while Plaintiff has participated in this litigation prior to motion practice, it appears he has now chosen to abandon prosecution of his claims. In fact, Plaintiff has not communicated with the Court, or otherwise appeared in this case since the matter was reopened in June 2018, after Plaintiff's municipal court charges were resolved. Regardless, it is incumbent upon this Court to resolve Defendants' motions on the merits.

### DISCUSSION

### I. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."

---

[7] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citations and quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief . . . [a] complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation

that discovery will reveal evidence of the necessary element."
*Phillips*, 515 F.3d at 234 (citations and quotations omitted);
*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710
F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set
out in detail the facts upon which he bases his claim. The pleading
standard is not akin to a probability requirement; to survive a
motion to dismiss, a complaint merely has to state a plausible
claim for relief." (citations and quotations omitted)).

In sum, under the current pleading regime, when a court
considers a dismissal motion, three sequential steps must be taken:
first, "it must take note of the elements the plaintiff must plead
to state a claim." *Connelly v. Lane Constr. Corp.*, 2016 U.S. App.
LEXIS 366, at *10 (3d Cir. Jan. 11, 2016) (citations and quotations
omitted). Next, the court "should identify allegations that,
because they are no more than conclusions, are not entitled to the
assumption of truth." *Id.* (citations and quotations omitted).
Lastly, "when there are well-pleaded factual allegations, the
court should assume their veracity and then determine whether they
plausibly give rise to an entitlement to relief." *Id.* at *10-11
(citations, quotations, and brackets omitted).

Plaintiff in this matter is proceeding, *pro se*. "The
obligation to liberally construe a *pro se* litigant's pleadings is
well-established." *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333,
339 (3d Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 106

(1976)). "Courts are to construe complaints so 'as to do substantial justice,' Fed. R. Civ. P. 8(f), keeping in mind that *pro se* complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004). "Liberal construction does not, however, require the Court to credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Also, "there are limits to [the courts'] . . . flexibility . . . . [P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245, 58 V.I. 691 (3d Cir. 2013). "Even a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282 (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## II.  Count I

As an initial matter, while Plaintiff names as defendants Chief Conroy and Sergeant Goggins, he has not asserted any specific claims against them.  Importantly, defendants Conroy and Goggins were not present during the subject incident.  Although Plaintiff generally accuses these individual defendants of failing to perform certain tasks, nowhere in the causes of action portion of

the Complaint does Plaintiff identify these specific defendants, or assert any claims against them. Notwithstanding the fact that Plaintiff is *pro se* and that the Court is obligated to construe Plaintiff's Complaint liberally, under the pleading requirements Plaintiff is, just like any other litigants, responsible to allege sufficient factual allegations to state a claim, and identify which claims are asserted as to each defendant.[8] *See Hamilton v. Jamieson*, 355 F. Supp. 290, 298 (E.D. Pa. 1973)("We are not required to stretch our imagination to manufacture allegations to supplement the complaint . . . ."); *Cassell v. Cty. of Montgomery*, No. 17-1077, 2017 U.S. Dist. LEXIS 95182, at *27 (E.D Pa. Jun. 20, 2017)("*pro se* litigants must nevertheless adhere to basic pleading requirements"); *Case v. State Farm Mut. Auto. Ins. Co.*, 294 F.2d 676, 678 (5th Cir. 1961)("[T]here is no duty [on the part] of the trial court or appellate court to create a claim which appellant has not spelled out in his pleading."). Accordingly, because the Court cannot discern any causes of action against Chief Conroy or Sergeant Goggins, they are dismissed as defendants.

---

[8]    I note that in the Complaint, Plaintiff asserts Counts I and II against all defendants, including Chief Conroy and Sergeant Goggins. However, because these two defendants were not personally involved in the detainment of Plaintiff, those § 1983 claims cannot be lodged against them. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

As to Count I, Plaintiff alleges that Defendants were acting under the color of state law when they unlawfully detained him at the Walmart store, and in that regard, Plaintiff claims that Defendants violated his constitutional rights.

Section 1983 provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To state a claim for relief under Section 1983, a plaintiff must allege: (1) the violation of a right protected by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988). The law provides citizens with "an avenue of recovery for the deprivation of established federal constitutional and statutory rights." *Salley v. Rodriguez*, No. 07-4914, 2008 WL 65106 at * 4 (D.N.J. Jan.4, 2008); *see also Groman v. Twp. of Manalapan,* 47 F.3d 628, 633 (3d. Cir.1995). "[T]he essence of section 1983's color of law requirement is that the alleged offender, in committing the act complained of, abused a power or

12

position granted by the state." *Hill v. Borough of Kutztown,* 455 F.3d 225, 241 (3d Cir. 2006) (quoting *Bonenberger v. Plymouth Twp.,* 132 F.3d 20, 24 (3d Cir.1997)).

In order to establish the color of state law element, a plaintiff must demonstrate that "there is such a 'close nexus' between the State and challenged action that private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary Sch.,* 531 U.S. 288, 295 (2001) (citation omitted). "A private action is not converted into one under color of state law merely by some tenuous connection to state action." *Gorman*, 47 F.3d at 638. Importantly, the color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under the color of state law. *Id.*

### A. Walmart

In the instant matter, Plaintiff merely restates § 1983's language in his Complaint, that "[e]ach and all acts . . . was done by the defendants under 'color of state law'" when they violated Plaintiff's fundamentally secured rights and committed criminal acts against him." Compl., ¶ Intro. As a threshold matter, to establish that Walmart is a state actor, Plaintiff alleges that Walmart and the Officers, "operating in a joint venture," "illegally detained and imprisoned the plaintiff without any probable cause or reasonable grounds." *Id.* at ¶ 42.

Under the New Jersey Shoplifting Act ("NJSA"), a merchant or police officer has a statutory right to detain a person suspected of shoplifting. N.J.S.A. 2C:20-11. The NJSA provides in relevant part:

> A law enforcement officer, or a special officer, or a merchant, who has probable cause for believing that a person has willfully concealed unpurchased merchandise and that he can recover the merchandise by taking the person into custody, may, for the purpose of attempting to effect recovery thereof, take the person into custody and detain him in a reasonable manner for not more than a reasonable time… Any law enforcement officer may arrest without warrant any person he has probable cause for believing has committed the offense of shoplifting…

N.J.S.A. 2C:20-11(e). Under the plain language of the Act, "[t]he statute permits detention in a reasonable manner for the purpose of recovering unpurchased merchandise. The statute [also] permits the merchant to act for his own benefit, but it does not compel the merchant to detain a suspected shoplifter and does not make the merchant an arm of the state concerned generally with enforcing the state's laws." *Gipson v. Supermarkets Gen. Corp.*, 564 F. Supp. 50, 55 (D.N.J. 1983).

In the context of a detainment by a merchant due to suspected shoplifting, the Third Circuit has held that store employees acting pursuant to a merchant's statute, such as N.J.S.A. 2C:20-11, cannot properly be found to have "acted under color of State law" unless (1) the police have a *pre-arranged* plan with the store by which the police substitute the judgment of the private parties for their

own official authority; and (2) under that plan, the police will arrest anyone identified as a shoplifter by the store without independently evaluating the presence of probable cause. *Cruz v. Melchoionda*, 727F.2d 79, 81 (3d Cir. 1984). However, merely calling the police or reporting criminal activity is not sufficient to allege a private actor acted under the color of state law. *See, e.g., Lawson v. Rite Aid of Pennsylvania, Inc.*, No. 04-1139, 2006 U.S. Dist. LEXIS 51829, at *12 (E.D. Pa. Jul. 26, 2006). Rather, there may be a finding of state action when the store employee, for example, is given authority to actually make arrests. *DeCarlo v. Joseph Horne Co.*, 251 F. Supp. 935 (W.D. Pa.1966).

Here, the gist of Plaintiff's allegation regarding Walmart and the police officers' "joint venture" theory is that the Officers failed to conduct their own investigation and improperly relied upon Walmart's loss prevention employees' assertion that Plaintiff shoplifted. Those conclusory allegations are the sum total of Plaintiff's theory of state action. But, simply claiming that the store had a pre-arranged plan with the Officers does not satisfy the *Twombly* pleading requirement. Other than his conclusory label, Plaintiff has not alleged any facts from which an inference could be made that a pre-arranged plan between Walmart and the police existed. Moreover, while Plaintiff, on one hand, alleges that Officers Williams and Thuring did not investigate the alleged shoplifting, elsewhere in Plaintiff's Complaint, he

alleges that a police report was issued, and that report indicates that the Officers had in fact reviewed Walmart's surveillance tape. In fact, the Officers reported that they, after reviewing the video, "observed" shoplifting activity by Plaintiff and his female companion. Compl., ¶ 28. Indeed, Plaintiff's own allegations belie his assertion that the police conducted no investigation whatsoever and substituted their own judgment with that of the Walmart employees. In any event, Plaintiff does not even allege that he was arrested as a result of the shoplifting incident.

Thus, I find that Plaintiff's allegations do not allege a relationship, let alone a "close nexus," between the store and any governmental agency or official. Instead, Plaintiff simply states that Walmart and the police "had a pre-arranged plan" and that the police "relied upon the inaccurate version of facts to justify detaining the plaintiff." Compl., ¶ 18. Moreover, Plaintiff alleges no conduct on the part of Walmart that either resembles a quasi-governmental function or rises to the level of state action. Absent factual allegations tending to show a prearranged plan, Walmart cannot be found to have "engaged in the 'concert[ed]' or 'joint action'" with the police necessary to bring Walmart within the scope of a § 1983 claim. *Cruz*, 727 F.2d at 80. Instead, a private company that follows state regulation concerning shoplifters is not transformed into a state actor for the purposes of § 1983. Accordingly, because Plaintiff fails to properly allege

state action on the part of Walmart, Count I against Walmart is dismissed.

### B.    The Municipal Defendants

In addition, in Count I, Plaintiff alleges that the Municipal Defendants falsely imprisoned him in violation of his constitutional rights.[9]  However, because only Officers Williams and Thuring were personally present at the time Plaintiff was detained by Walmart employees, this cause of action can only be asserted as to these two officers.  *See Rode*, 845 F.2d at 1207. And, Plaintiff has failed to state a plausible claim of false imprisonment against them.

A claim for false imprisonment can only be sustained under § 1983 when an officer lacks probable cause to detain an individual. *See O'Connor v. City of Philadelphia*, 233 Fed. Appx. 161, 164 (3d Cir. 2007); *Adams v. Selhorst*, 449 Fed. Appx. 198, 201 (3d Cir. 2011).  In other words, the existence of probable cause is a

---

[9]    Although Plaintiff lists violations under First, Fourth and Fourteenth Amendments, the only claim the Court can discern from Count I is false imprisonment.  Indeed, Plaintiff titles Count I as "Wrongful Detention and Imprisonment."

complete defense to a claim of false imprisonment. *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016).[10]  Here, Plaintiff, in conclusory fashion, alleges that the Officers did not have probable cause to detain him.  However, as I indicated earlier, Plaintiff's own allegations contradict his bald assertion.  In the police report, Officer Thuring states that having viewed Walmart's surveillance video, he observed Plaintiff and his female friend shoplift a "cell phone case" from the store.  *Id.* at ¶ 28.  Although Plaintiff disputes what the video depicts, there is no allegation that Officer Thuring misrepresented the fact that he reviewed the video.  As such, based on Plaintiff's own allegation, Officer Thuring indeed had probable cause to detain Plaintiff.

But, even if the Officers did not obtain probable cause by way of the video, they, nonetheless, are entitled to qualified immunity on this claim, because they reasonably relied on the version of events communicated to them by Walmart's loss prevention employees in obtaining probable cause.  Indeed, in the context of false imprisonment, "the qualified immunity analysis turns on whether the police officers reasonably but mistakenly concluded that probable cause existed to arrest, detain and initiate the criminal prosecution." *Palma v. Atlantic County*, 53 F. Supp. 2d 743, 769 (D.N.J. 1999).  "Whether probable cause exists depends

---

[10]    I stress that Plaintiff was not arrested by the Officers.

upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). In making such an inquiry, courts must employ a "common sense approach." *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000).

Here, I find that it was reasonable for the Officers to rely upon the information given by Walmart's LPOs, particularly since there is no reasonable inference that this Court can draw from the Complaint that the Officers had any reason to believe that the information was somehow not reliable. Thus, the Officers are entitled to qualified immunity even if they were mistaken in believing that they had probable cause to detain Plaintiff. Accordingly, Count I against Officers Williams and Thuring is dismissed with prejudice.

## II. Count II

In Count II of the Complaint, Plaintiff alleges that Officer Williams "committed civil assault by balling his fist up during the interrogation," which placed Plaintiff in fear of bodily harm. Compl., ¶ 44. Plaintiff goes on to allege that "[a]ll defendants participated by their support and physical presence," in violation of Plaintiff's due process rights under the Fourteenth Amendment. *Id.*

As an initial matter, while Plaintiff asserts Count II against all defendants, the assault claim can only be asserted as to

Officer Williams, because he is the only person alleged to have participated in the assault. Next, Plaintiff alleges that his constitutional right was violated under a "civil assault" theory; however, there is no such cause of action arising under § 1983.[11] *See Heilimann v. O'Brien*, No. 14-1271, 2017 U.S. Dist. LEXIS 31885, at *12 n.5 (M.D. Pa. Mar. 7, 2017)(finding that assault and battery claims should properly be brought under state law). Rather, I construe Count II as an intentional tort of assault under state law. However, aside from the fact that Plaintiff has failed to allege an assault claim,[12] Plaintiff has not alleged that he filed a tort claims notice under the New Jersey Tort Claims Act ("TCA"), N.J.S.A. § 59:8-3. Indeed, the TCA bars suit on a claim "relating to a cause of action for death or for injury or damage to person or to property" if the claimant fails to present his notice of claim to the entity within 90 days of accrual of his claim.

---

[11]   To be clear, nowhere in Plaintiff's Complaint does he allege the use of excessive force by any defendant.

[12]   In New Jersey, to establish a common law tort of assault, a plaintiff must show that (1) the defendant acted with intention to cause harm or offensive contact with the person, or an imminent apprehension of such a contact, and (2) that the other is thereby put in such imminent apprehension. *See Leang v. Jersey City Bd. Of Educ.*, 198 N.J. 557, 591 (2009) (citation omitted). Here, while Plaintiff alleges that he was put in imminent apprehension, Plaintiff fails to allege that Officer Williams had any "intention to cause harm or offensive contact" with Plaintiff. Rather, Plaintiff simply alleges that Officer Williams "committed civil assault by balling his fist." Compl., ¶ 42. Plaintiff has failed to allege that the Officer intended to cause any harm to Plaintiff.

N.J.S.A. 59:8-8. "The filing of a late notice of claim with an entity without leave of court is a nullity and does not constitute substantial compliance with the terms of N.J.S.A. 59:8-9." *Rogers v. Cape May Cty. Office of Pub. Def.*, 208 N.J. 414, 427 (2011).

Accordingly, Plaintiff's assault claim (Count II) against Officer Williams is dismissed without prejudice.

**III. Count III**

Plaintiff alleges in Count III that Officers Williams and Thuring retaliated against him by issuing two traffic tickets. Plaintiff claims that the motivation for the retaliation was bore out of the Officers' "failure to coercively force plaintiff to admit to a crime he had no knowledge of or involvement." Compl., ¶ 26. In that regard, Plaintiff avers that he received the tickets as a punishment for criticizing the Officers' conduct when Plaintiff was detained. Plaintiff also alleges that the Officers were motivated to retaliate against Plaintiff because Plaintiff gave them "the middle finger." These retaliatory acts, Plaintiff says, violated his First Amendment right to free speech.

To establish the elements of a retaliation claim predicated on the First Amendment under § 1983, a plaintiff must allege "(1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was

a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

First, Plaintiff's allegation that he gave "the middle finger" to the Officers arguably constitutes as a protected activity, actionable under the First Amendment. *See, e.g.*, *Sandul v. Larion*, 119 F.3d 1250, 1255 (6th Cir. 1997); *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990); *Nichols v. Chacon*, 110 F. Supp. 2d 1099, 1102 (W.D. Ark. 2000); *Brockway v. Shepherd*, 942 F. Supp. 1012, 1015 (M.D. Pa. 1996). As to the second element, the issuance of traffic tickets may also arguably deter a person of ordinary firmness from exercising his rights. *See, e.g., Born v. Aberdeen Police Dep't*, No. 13-2963, 2014 U.S. Dist. LEXIS 74578, at *16 (D.N.J. Jun. 2, 2014); *Persaud v. McSorley*, 275 F. Supp. 2d 490, 495 (S.D.N.Y. 2003); *Garcia v. City of Trenton*, 348 F.3d 726 (8th Cir. 2003); *Cruise-Gulyas v. Minard*, No. 19-43, 2019 U.S. App. LEXIS 7369, at *6 (6th Cir. Mar. 13, 2019).

Finally, Plaintiff sufficiently alleges a causal connection. To establish the requisite causation for a retaliation analysis, the plaintiff may typically allege either an unusually suggestive temporal proximity between the protected First Amendment conduct and the allegedly retaliatory action, or a pattern of antagonism coupled with timing. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Here, the issuance of the

traffic tickets to Plaintiff by the Officers *immediately* after the shoplifting incident demonstrates an unusually suggestive temporal proximity that satisfies the causal connection element at this pleading stage. *See Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001)(recognizing that a plaintiff can defeat a motion for summary judgment, let alone a motion to dismiss, in the First Amendment retaliation context by showing a "suggestive temporal proximity" between his or her constitutionally protected activity and the adverse action alleged to have been retaliatory). Therefore, the retaliation claim against Officers Williams and Thruing will proceed, and the Municipal Defendants' motion to dismiss as to Count III is denied.[13]

## IV.   Count IV

It appears in Count IV, Plaintiff seeks to assert a *Monell* claim against the East Brunswick Police Department. As a preliminary matter, Plaintiff cannot bring a *Monell* claim directly against the Police Department, because a municipal police department is not a separate entity from the municipality. *See*

---

[13]   The Municipal Defendants argue that Plaintiff's retaliation claim is barred by *Heck v. Murphy*, 512 U.S. 477 (1994), because Plaintiff was convicted of the traffic charges in Municipal Court. The Municipal Defendants misapply *Heck*. *Heck* applies when a judgment in favor of the plaintiff in a subsequent civil suit would necessarily imply the invalidity of his conviction or sentence. *See Fernandez v. City of Elizabeth*, 468 Fed. Appx. 150, 153-54 (3d Cir. 2012). Here, however, a favorable judgment in Plaintiff's retaliation claim will in no way invalidate his conviction for certain traffic offenses.

*Woodyard v. County of Essex*, 514 Fed. Appx. 177, 181 (3d Cir. 2013); *Jackson v. City of Erie Police Dep't*, 570 Fed. Appx. 112, 114 (3d Cir. 2014); *see also Moore v. Carteret Police Dep't*, No. 13-943, 2014 U.S. Dist. LEXIS 170256, at *25 (D.N.J. Dec. 8, 2014). Accordingly, the East Brunswick Police Department is dismissed as a defendant.

Nevertheless, because Plaintiff is *pro se*, the Court will construe the *Monell* claim as having been asserted against the East Brunswick Township. Section 1983 imposes civil liability upon "any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Padilla v. Twp. of Cherry Hill*, 110 Fed. Appx. 272, 278 (3d Cir.2004) (citation omitted). Unlike unincorporated police departments or municipal courts, municipalities are legal entities amenable to suit for their unconstitutional policies or customs. *Monell*, 436 U.S. at 690. To recover against a municipality, a plaintiff must "demonstrate that municipal policymakers, acting with deliberate indifference or reckless indifference, established or maintained a policy or well-settled custom which caused a municipal employee to violate plaintiffs' constitutional rights and that such policy or custom was the 'moving force' behind the constitutional tort." *Hansell v. City of Atlantic City*, 152 F.Supp.2d 589, 609 (D.N.J. 2001).

Here, beyond Plaintiff allegation that the Township had a policy or custom of inadequate training and/or investigation, the Complaint does not "specify what exactly that custom or policy was," *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009), assert facts showing a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation," *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007) (internal quotations omitted), or "identify specific deficiencies in any training program to which [the Officers] might have responded." *Ianuale v. Borough of Keyport*, No. 16-9147, 2017 U.S. Dist. LEXIS 130467, at *3 (D.N.J. Aug. 16, 2017). Thus, Plaintiff's *Monell* claim against the Township is dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, Walmart's motion to dismiss is **GRANTED** in its entirety, and the claims against Walmart are dismissed without prejudice. The Municipal Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part as follows: Count I, *i.e.*, §1983 false imprisonment, against Officers Williams and Thuring is dismissed with prejudice; Count II, *i.e.*, civil assault, against Officer Williams is dismissed without prejudice; Count III, *i.e.*, retaliation, against Officers Williams and Thuring may proceed, and Count IV, *i.e.*, *Monell* claim, against the Township of

East Brunswick is dismissed without prejudice. Finally, Chief Conroy and Sergeant Goggins are dismissed as defendants.

The Court acknowledges that Plaintiff has likely abandoned his case. In that regard, the Court also issues an Order to Show Cause why the remaining claim in this case should not be dismissed for lack of prosecution. Plaintiff must respond, in writing, to the Order to Show Cause within 15 days from the date of the Order accompanying this Opinion. Failure to respond by Plaintiff will result in the dismissal of this matter.


DATED:    March 29, 2019                     /s/ Freda L. Wolfson
                                             Hon. Freda L. Wolfson
                                             U.S. District Judge